# COURT OF APPEALS, JUNE TERM, 1805.

## MARTIN vs. THE STATE.

## CLAYPOLE vs. MARTIN.

THE *first* of these cases was a writ of error to the general court. It was for the removal of a judgment rendered in that court, on an *indictment* found at September 1783, against the plaintiff in error, for receiving a fee as *attorney-general* on an *attachment of contempt* issued out of said court against a *juror* for nonattendance at its September term 1778. There was a *general demurrer* to the indictment, and a joinder in demurrer. The general court, at April term 1788, *overruled* the demurrer, and fined the attorney-general £5 current money, and costs; and to reverse that judgment this writ of error was brought.

The other case was an *appeal* from the general court. It was an action of *assumpsit* for 151*l* 5s 0*d* current money, for money paid, laid out and expended, brought in that court by the appellant against the appellee, and the case was submitted to the court on

*An attachment of contempt against a juror for non attendance, is not an action for which the attorney general can receive a fee for appearing on behalf of the state.*

*Where an indictment is found on a presentment in a criminal case, and the party presented and indicted submits the case to the court, the attorney general is not entitled to a fee of 200lbs. of tobacco or 25s.*

a statement of facts, viz. That the defendant, (Martin,) had been presented in *Dorchester* county court in 101 cases for *assaults and batteries.* That the deputy attorney of the state drew indictments on all and each of the presentments, and true bills were found. That the defendant appeared and confessed the charges, and submitted to the court, on each of the indictments, and was fined in each case, and ordered to give security for the fines and fees. That the plaintiff, (Claypole,) became security therefor, and paid the fees claimed thereon to the said deputy attorney of the state, to wit, twenty-five shillings on each indictment so found. The question submitted to the general court was, whether the deputy attorney of the state was entitled to receive 200lbs. of tobacco, or 25 shillings, for his fee on each of said indictments? And if so, judgment to be entered for the sum of 151*l* 5*s* 0*d* current money damages, and costs; if not, *non pross* to be entered. The general court, at September term 1802, gave judgment for the defendant, and the plaintiff appealed to this court.

*Martin,* (Attorney General,) the plaintiff in error, and for the Appellant. The object of the first proceeding is to ascertain whether or not the attorney-general is entitled to a fee upon an *attachment of contempt.* He never did receive a fee on all kinds of attachments, but only in certain cases where the party had refused or neglected to attend the court as a juror, and which is considered as a criminal process. In cases where the attachment is used in the nature of a civil process, such as to compel the attendance of a witness, the attorney-general never did consider that he was entitled to receive a fee. And as this question is connected with that raised in the other case, which has been stated, for the purpose of getting the opinion of the court on a subject affecting the attorney-general, and his deputies, as to their fees in criminal prosecutions, where indictments are found, and parties submit their cases to the court, he wishes them to be considered conjunctively.

1. He will take up the *last* case first, and endeavour to satisfy this court, that the judgment of the general court is erroneous, and ought to be reversed. In order to form a correct judgment in the case, it is necessary to attend to the act of assembly of 1715, *ch.* 48. This is not the act by which attorneys were originally entitled to receive fees. It is merely a restrictive act. Attorneys under that act are entitled to a fee of 400lbs. of tobacco in the general court, and 600lbs. of tobacco in the court of chancery and court of appeals, for prosecuting or defending any suit or action in either of those courts. The title of the act is "for rectifying the ill-practices of attorneys of this province, and *ascertaining* fees to the attorney-general, clerk of indictments, attorneys and practitioners of the law in the courts of this province, and for levying the same by way of execution."² It is an established rule of law, that the title of an act cannot be taken into view in the construction of the act. The preamble may be resorted to for the purpose of clearing doubts in parts of the act which may be doubtful. The 1st *section* of the act of 1715, *ch.* 48, is relative to the issuing of criminal process. By this section, if there is no presentment, process is not to issue without an order of council or of the court. The 2d *section* prohibits the clerk of indictments, (meaning the deputy attorney of the state,) from issuing criminal process, where there is no presentment found, without an order of council or of the county court. The 3d *section* prohibits the clerk of the provincial court, or clerks of the county courts, from issuing criminal process, without an order from an attorney, &c. The attorney, to direct the process, must have an order of council or of the court. The 4th *and* 5th *sections* go to rectify certain abuses which had taken place in suing navigation bonds—Also that public bonds, when sued by an individual, must be endorsed for whose use suit is brought, &c. The 6th *section* contains that part of the law upon which this case is supposed to turn. By this section it is provided, with respect to prosecutions in the county courts, that "if the party pre-

sented confess his or her crime, and submit to the court, then the clerk of indictments, (meaning the deputy attorney of the state,) shall have 100lbs. of tobacco for his fee, and no more; but if the clerk of indictments draws a bill of indictment upon the said presentment, and the party therein presented traverses such presentment or bill of indictment, and puts himself upon the country for trial thereof, then the clerk of indictments shall have 200lbs. of tobacco for his fee, and no more." It is well known that the party presented cannot be compelled to answer to a presentment without an indictment is found. He *may* submit on a presentment. The general court, in the case now under consideration, under this section of the law decided, that as the party did submit, though an indictment was drawn, the attorney was entitled only to 100lbs. of tobacco for his fee. If this construction is correct, there are a variety of cases where the attorney is not entitled to a fee at all. If we go upon the strict letter of the law, the court ought to have decided that the attorney was not entitled to any fee; for there is no provision in the law for any fee to the attorney, if there is an *indictment drawn,* and the party *submits* to the court. The law only gives a fee of 200lbs. of tobacco if there is an indictment drawn, and the party *traverses* the indictment, or a fee of 100 lbs. of tobacco if there is only a presentment, and the party confesses the charge, and submits to the court. It is contended that 200lbs. of tobacco is the fee in all cases in the county courts, unless particularly restricted by this act. By this section of the act there are only two cases noticed, viz. If the party submits on presentment, or where an indictment is drawn, and the party traverses and puts himself upon the country. Suppose the party demurs to the indictment. This is not a case within the letter of the law; and the attorney is not entitled to a fee, if the construction which the general court has given to the act is correct. Suppose the person presented or indicted obtains a *nolle prosequi.* There is no fee allowed by the law—and yet the attorney has had all the

trouble of drawing the indictment, &c. He never doubted but the attorney is entitled to his fee in such cases; and also in cases where, after indictments. the party dies or runs off. The state has always allowed to the attorney-general a fee of 400lbs. of tobacco in all such cases in the general court—and yet by the law, if the strict letter is to be pursued, he is not entitled to any fee. The object of the attorney-general is to have a fair investigation of the subject. He is not more interested than other gentlemen of the bar. The *7th section* provides for fees in civil cases— "that there shall be paid to any attorney, or *other person*, practising the law in any of the county courts of this province, for bringing, prosecuting or defending, any action, of what nature or quality soever, to final judgment, &c. the sum of 100lbs. of tobacco, unless the principal debt and damages, or balance of any debt and damages sued for and recovered, do exceed the sum of 2000lbs. of tobacco, or £10 sterling, that then the said attorney shall have 200lbs. of tobacco, and no more; and to any attorney, or *other person* practising the law in the provincial court, high court of chancery, commissary's court, court of vice admiralty, or for prosecuting or defending any appeals, writs of error, or any other matter or thing whatsoever, before his excellency the governor and council, the several sums hereafter expressed and set down; that is to say, for prosecuting or defending any cause, plaint, or action of what nature soever, in the provincial, (now general) court, to final judgment, &c. the sum of 400lbs. of tobacco, and no more; for any fee in the high court of chancery, and court of vice admiralty, 600lbs. tobacco, &c. for any fee upon any writ of error, or appeal, which shall be before his excellency the governor and council, (now court of appeals.) 600lbs. of tobacco, and no more; *and to his majesty's attorney-general for any action in the provincial (now general) court, at the suit of his majesty, indictment. presentment or information, the sum of 400lbs. of tobacco, and no more.*" It is a question whether this section relates to actions of trover,

detinue, assault and battery, slander, replevin, tres-pass *vi et armis*, trespass *quare clausum fregit*, eject-ment, dower and partition; for in some of the said ac-tions the specific property may be recovered, and only one penny damages given—in some of the cases no damages at all; and although property may be reco-vered to a considerable value, yet if the damages do not exceed £10, the attorney, under the act, is only entitled to 100lbs. tobacco in suits in the county court. Suppose a suit is brought where there is £1000 due, but the debt is paid in full, or a sum less than £10 is due when the case is ended—what fee is the attorney entitled to? It has always been the practice in this state for attorneys to send their fees out immediately, not waiting until the suit is ended— and this practice has been sanctioned by the courts; yet if this law is to have a rigid construction, the practice is incorrect. To show the absurdity of the act—suppose the defendant's attorney, by his great abilities, gets his client clear upon payment of a sum less than £10, for his trouble he gets a fee of 100lbs. tobacco; but if he combines with the attorney of the plaintiff, and suffers a judgment for above £10, then he gets a fee of 200lbs. of tobacco. The true mean-ing of the law is, that the attorney is entitled only to 100lbs. of tobacco, where the debt due, or damages *liquidated*, does not exceed £10 sterling, or 2000lbs. tobacco. There can be no balance of damages in as-sault and battery, slander, &c. for wrongs and inju-ries done; and in all other cases than those of debt, or damages liquidated, less than £10 sterling, the attor-ney is entitled to a fee of 200lbs. of tobacco. The *second* section of the act of 1763, *ch.* 21, and the *first* section of the act of 1791, *ch.* 68, show that damages means liquidated damages in the nature of a debt; for it never was intended that justices of the peace should try cases of assaults and batteries &c. The obvious meaning of the act of 1715 is, that the attor-ney is only to claim a fee of 100lbs. of tobacco, where the party by his suit only claims a debt or sum of money less than £10 sterling, or 2000lbs. of

tobacco. The construction, if you tie it down to the letter of the law, says the *sum recovered*. But if that is the case, it often occurs that neither the plaintiff nor defendant's attorney are entitled to a cent; for it often happens that cases are entered agreed, on payment of costs. He holds it to be correct, that attorneys in the county courts are entitled to a fee of 200lbs. of tobacco in all cases, unless it is evident by the plaintiff's demand he only claims a sum not exceeding £10 sterling, or 2000lbs. of tobacco. By the act of 1763, *ch.* 23, *s.* 12, "an attorney being concerned for either plaintiff or defendant in any case of *equity* to be heard before the county courts, shall have and receive 100lbs. of tobacco where the debt doth not exceed £10 sterling, or 2500lbs. of tobacco; and where the debt doth exceed £10 sterling, or 2500lbs. of tobacco, the attorney shall receive 200lbs. of tobacco." Where the party files his bill in the county court acting as a court of equity, he states in his bill the sum due to him, and if it does not exceed £10 sterling, or 2500lbs. of tobacco, the attorney is to receive only 100lbs. of tobacco for his fee—This act going upon the same principles as the act of 1715, in common law cases. By the act of 1715 there is no provision for any fee but where suits are brought for debt, or liquidated damages—Leaving the fee as it stood before that act in all other actions. The act of 1715 goes on, as we have seen in the *7th section*, to give "to any attorney, or other person practising the law in the provincial court," 400lbs. of tobacco for his fee, "in any cause, plaint or action, of what nature soever." If the attorney-general had not been named in the section, he would be considered under the general words of "other person practising the law," &c. to be entitled to 400lbs. of tobacco for his fee, in all state suits prosecuted or defended in the general court. The words referring to the attorney-general—"and to his majesty's attorney general, for any action in the provincial court, at the suit of his majesty, indictment, presentment or information, the sum of 400lbs. of tobacco," are not restrictive, though indictment, presentment, &c. are

used; for the section is clear enough without these words, for it is said, "other person practising the law," &c. is entitled to the fee of 400lbs. of tobacco, in "any cause, plaint or action, of what nature soever." The practice ever has been for the attorney-general to receive the fee of 600lbs. of tobacco for prosecuting or defending cases in the court of appeals and court of chancery, where the state was a party, and yet there is no provision in the law that he shall have a fee in those courts, unless the general words of "other person practising the law," &c. authorise him to receive the fee. It was not the policy of the law to restrict the attorney-general, for he could receive no other fee than the tobacco pittance. The law has not been drawn with very great precision or accuracy. The very first section shows that it has not —For it is said "no process for any criminal matter, or *other misdemeanor*, shall issue," &c. He knows of no misdemeanor for which a party can be indicted, which is not a criminal matter. The general principle which the act of 1715 had in view, was, that for prosecutions in the county courts, where the prosecutor had not the trouble of drawing an indictment, he should receive no larger fee than 100lbs. of tobacco. So in civil cases, where the suits were for petty sums, it was supposed, as the debt or damages were liquidated, the attorney would have but little trouble, a less fee was given than in other cases. But in all other cases the fee was to remain the same as it stood before the act of 1715. Antecedent to this law the fee was 200lbs. of tobacco in all cases in the county courts, and the object of this law was to restrict the fee in the particular cases therein mentioned.

2. He will now take up the *first* case. Every attorney, practising the law in the general court, is entitled, in every suit he prosecutes or defends, to a fee of 400lbs. of tobacco. And an attachment which issues out of that court to bring in a person for a breach of the law, is as much a suit as any case for debt upon a bond or any other case. The act of 1715, *ch.* 37, *s.* 3, directs that every person returned as a

juror, and shall not appear, but make default, shall be fined by the provincial court, &c. It will not be contended that a person summoned to serve as a juror, and who does not attend, may not be presented and indicted. But this being one of those cases punishable as a contempt, may be proceeded on by attachment in a summary way, or the party may be presented and indicted. A summary proceeding is as much an action or suit as a formal proceeding, and the attorney-general is as much bound to attend to the one as to the other. On a petition for freedom, the proceeding may be in a formal manner by *homine replegiando,* or action of trespass and false imprisonment, for holding, &c. or in a summary way, by petition, without the intervention of a jury. In such cases a fee has always been taxed—for before the year 1793, hundreds of petitions were tried in this summary way by the general court, and it has uniformly been the practice in such cases, as well as in all cases of summary proceedings, to allow a fee to the attorney. And in the present case, the attorney-general is as much entitled to a fee as in any other case; and to satisfy the court that he is, he will proceed to show—

1. What is meant by an *action* and its definition.

*Actio nihil aliud est quam jus prosequendi in judicio quod alicui debetur.* 2 *Inst.* 40. *Bracton, Lib.* 3, *c.* 1, *fol.* 17. Action is the form of a *suit* given by law for *recovery of that which is one's due.* Actions are either *civil* or *criminal. Jacob's Law Dict.* tit. *Action.* The instruments by which this remedy is obtained, are a variety of *suits* or actions which are defined by the mirror, *the lawful demand of one's right.* 3 *Blk. Com.* 116. An *application to a court of justice for redress,* is an action. 1 *Bac. Ab.* 26. Wherever any thing is *to be recovered,* or the party is to be restored to any thing, it is an action. 2 *Bac. Ab.* 26. A writ of error, where any thing is to be recovered, is an action, and may be released by that name. *Co. Litt.* 288, *b.* 209. Actions, are divided into civil and criminal. Criminal are either to have judgment of death, as appeals

June 1805

Martin
vs
The State.

of death, &c. or only to have judgment of damages to the party, fine to the king, imprisonment, &c. 1 *Bac. Ab.* 26. *Co. Litt.* 209. *Suit* in law, the same as an *action. Jacob's Law Dic.* tit. *Suit. Criminal cause,* the same as *criminal action. Wood's Inst.* 637, 638. When therefore the state hath any thing due to it—where it has a right—when any law hath been violated, or any grievance been sustained which ought to be redressed by punishment of death, imprisonment, &c. or by fine—for the obtaining which due—for recovering which right—or for the procuring which redress, the state is obliged to have recourse to a court of justice —*it is by action at the suit of the state.*

2. That all *crimes, offences, affronts to the power and infractions of the rights of the community,* are to be *punished and redressed* at the suit of the state.

The king is supposed by the law to be the person injured by *every infraction of the public rights* belonging to that community, and is therefore in all cases the proper prosecutor for every public offence. 4 *Blk. Com.* 2. In *all criminal proceedings* or prosecutions for offences, the king is *prosecutor. All affronts to the power and breaches of the rights of the community, are immediately offences against him.* 1 *Blk. Com.* 278. Hence it follows, that all crimes and offences are considered as immediately against the state; and that the same are punished *by actions at the suit of the state:* That in proceedings for their punishment, the state is prosecutor, and one of the parties.

3. That for a juror not to serve when summoned, is a *crime or offence* punishable at common law, discretionally as a contempt—and by our act of assembly by a certain fine.

A *crime or misdemeanor* is an *act* committed or *omitted* in violation of a public law, either forbidding or commanding it. 4 *Blk. Com.* 5. *Wood's Inst.* 356, 344. The offence of a juryman not attending, is the *omission* of a duty to which he is bound by the summons both by common law, and the act of assembly. *One species of crimes,* contempts against the king's prerogatives—*disobedience to the king's writs,*

June 1805

Martin
vs.
The State

is a *contempt* of the king's prerogative. 4 *Blk. Com.* 122. 1 *Hawk. ch.* 22, *s.* 4. For which the party may be fined and imprisoned. 4 *Blk. Com.* 123. *Hawkins*, in his divisions of *crimes*, states among others, contempts against the king's courts and against the king's prerogative. *Hawk. ch.* 21, *s.* 22. Offences more immediately against the king, not capital, come generally under the titles of *premunire*, misprision and *contempts*. 1 *Hawk. ch.* 19, and punishable in the same manner as assaults and batteries. A contempt is a criminal matter examinable by way of attachment. *Holt's Rep.* 136. The different courts where *offenders* may be *prosecuted* to punishment. 4 *Blk. Com.* 258. The court of king's bench takes notice of all criminal causes, (the same as criminal actions,) from high treason to the most trivial misdemeanor. 4 *Blk. Com.* 265. In the courts of quarter sessions many *offences* ought to be prosecuted—in this court *some* are proceeded in by *indictment, others* in a *summary way.* 4 *Blk. Com.* 272. The proceedings in the courts of criminal jurisdiction, in order to the *punishment of offences*, are divisible into two kinds; *summary* and *regular.* Summary, without a jury; regular by a jury. 4 *Blk. Com.* 280. The common law is a stranger to summary proceedings, unless in the case of contempts. To the head of summary proceedings may be referred the method of *punishing contempts* by the superior courts of justice by *attachment.* The *offence* so *punished*— Those committed by jurymen in collateral matters relating to the discharge of their office; such as making default when summoned. 4 *Blk. Com.* 283, 284. Though they may be proceeded against in a summary way, they may also be proceeded against at common law by presentment and indictment.

4. That an attachment is a *process.* An attachment is process to bring in the *offender. Wood's Inst.* 642. It is a writ to answer to the king of the contempt shown to the counsel of the king. *Bro. Ab.* tit. *Contempt*, 8, 13. *Vin.* tit. *Contempt.* (*A.* 2.) An attachment is process awarded in discretion of the judges. *Hawk.* 141. *Attachment:* An apprehension of a man

by his body to answer, &c. *Cowell. Attachment:* An apprehension of a man, to bring him to answer an action. *Johnson's Dict.*

5. What is meant by *process? Process,* largely taken, signifies the whole proceedings in an *action, civil,* or *criminal.* That by which a person is called into *court* to *answer* unto. *Wood's Inst.* 638. *Jacob's L. D.* tit. *Process.*

6. The manner of proceeding on attachment. The *process* of *attachment,* is merely meant to bring the *party into court;* when there, he must either stand committed, or put in bail, to answer on oath such *interrogatories* as shall be administered for the better information of the court. These interrogatories are *in the nature of a charge.* The *accusation must be exhibited in four days;* if any of the interrogatories are *improper,* the *defendant* may refuse to answer, and move the court to have them struck out. If he confesses, the court *punishes.* If he can clear himsel upon oath he is discharged; but, if perjured, may be prosecuted for perjury. 4 *Blk. Com.* 287. It is as much a trial as any other suit, and partakes of all the circumstances as other cases. The mode of trial is a singular one. The *defendant* answers on oath to a *criminal charge.* If *offences* be done by persons not in court, and *complained* of by affidavit, the court may grant an attachment—may commit him to answer interrogatories. The court may, the party first giving notice to the *prosecutor* of his design, recognize him to answer interrogatories, &c. 2 *Hawk.* 141. *Defendant—*'s the person sued in a personal *action. Trial—*The examination of a *cause* whether civil or *criminal. Jacob's L. D.* tit. *Trial. Trial,* is the examination of some matter in question between two or more parties, according to the law of the land. 5 *Bac. Ab.* 217. In capital cases, appeals and attachments, the party must not appear by attorney. 1 *Bac. Ab.* 185. Meaning, he must be in court himself; but he may employ counsel to assist him. *In process of contempt* the party has *no day to answer* until the

attachment.   *Bro. Ab.* tit. *Jours*, 22.   *Vin.* tit. *Contempt*, c. 4, p. 5.

He will soon show that attachments are considered as suits.

Contempt of the court, and an attachment issued. The person came in and recognized to answer interrogatories. *Salk.* 84. Upon attachment, the person only to answer interrogatories—If he swear off the contempt, he is discharged. 12 *Mod.* 348. An attachment advocated by counsel—2 *Burnd.* 219. In this case counsel appeared and argued the case just in the same manner as other cases. Motion to quash the writ of attachment and argued *by counsel on each side. Comyns,* 547. In *Thomas Jones,* 178, the party was discharged on paying a small *fine, and costs to the prosecutor.* The case was conducted as other suits, and the party called *defendant.* Though the attachment is prayed for at the instance of a party, and when issued it is put on the part of the crown, and considered a criminal proceeding. In 1 *Stra.* 185, the case is stated as the suit or action of *The King against Jones.* In the case of *The King vs. Barber, Stra.* 444, interrogatories settled by *counsel.* The court struck out what was improper. This prosecution went no further, the act of grace intervening. In *Bunberry,* 14—Contempt discharged by act of pardon—Shows that the attachment was considered as a criminal case, and that a pardon put an end to it. The case in 1 *Sir W. Blk.* 637, shows that an attachment is is a mesne process—is bailable, and may be advocated by counsel. The party here submitted on his clerk becoming answerable for fine and costs. There is a difference between *an attachment for nonpayment of costs,* and an attachment to answer a criminal charge. *Cowp.* 136. 4 *Blk. Com.* 285. *By consent the party may appear to an attachment by counsel, without being himself in court. But he cannot so appear without consent. The case of *King vs. Hall,* 2 *Sir W. Blk.* 1110, shows that an attachment of contempt is a criminal case, and solemnly determined. *King vs. Beardmore,* 2 *Burr.* 792. This was an attachment for

a contempt, prosecuted entirely by government, and brought by the attorney-general—and the court thanked him for his attention to the case. The contempt here was not a private one, but one in which the government was concerned, and set on foot on the part of the government. *Bro. Ab.* tit. *Contempt, pl.* 6, 9. *F.* went armed into the palace, which was shown to the counsel of the king. The court would have advice of the counsel of the king how he should be punished. *Cooke's Prac. Cases*, 51. It was moved to estreat the recognizance, because the defendant had not appeared. This case shows the party may be committed, or suffered to recognize, and if he does not appear the recognizance may be forfeited in the same manner as in other criminal cases. *King vs. Harries, Cooke's Prac. Ca.* 112. This case shows that the sheriff must return the attachment, and if he returns *attached*, a rule may be laid for him to bring in the body on the attachment, and that the court are to decide upon motions, &c. in the same manner as other cases. That the king's attorney is to conduct the case as in all other criminal cases. He is to call the attachment, &c. In the case of *Cox vs. Philips, Cases K. B.* 239—Interrogatories were filed, and the defendant demurred to them. The king's counsel argued the demurrer. The attachment in this case issued for an abuse of the process of the court, and after it issued it was conducted by the king's attorney, and considered a criminal proceeding, and prosecuted on the crown side. A quaker cannot be a witness to obtain an attachment. Being a criminal proceeding, an affirmation was not permitted. *Ellwood vs. Ellwood, Cooke's Prac. Ca.* 124. An attachment being a criminal process, may issue against a peer. 1 *Wils.* 332. Some attachments are considered civil process. Where an attachment goes for the purpose of instituting a civil suit, it is a civil process. But where it issues for a contempt it is a criminal process. Process at the king's suit may be served on Sunday. An attachment for contempt partakes of the nature of process on indictment. 12 *Mod.* 348. The question arose in a

*Term Rep.* 86, 2 *Lord Raym.* 1028, as to the service of an attachment on Sunday. There are *two kinds of attachment*, the one entitles the party to his *action for damages*; the other *punishes the contempt.* 12 *Mod.* 164, 348. An attachment may be taken out at the suit of the *king* and *party.* 2 *Hawk. ch.* 150, *s.* 27. To show that contempts may be punished by information or indictment, he cites *Wood's Inst.* 656. Information lies for contempt. Escaping from legal imprisonment on a process of contempt. 2 *Hawk. ch.* 26, *s.* 1. Contempts may be punished by indictment. 2 *Hawk. c.* 22, *s.* 4. Every contempt, if no other provision made, may be proceeded against by indictment. Contempts of courts of justice indictable. 1 *Hawk. c.* 21, *s.* 10, *c.* 22, *s.* 5. 1 *Dall. Rep.* 319. A man may be indicted for contemptuous words spoken of the judge of a court. In this case one of the judges doubted whether the words spoken amounted to a contempt. *King vs. Mayo,* 1 *Siderf.* 144. The attachment must go on the crown side of the court, and in the name of the king. When on the civil, and when on the crown side, particularly mentioned. *Wood vs. Webb,* 3 *T. R.* 253. As to attachments for costs.—1 *T. R.* 256. 8 *T. R.* 86. Other cases cited. 1 *Stra.* 267. *King vs. Horsley,* 5 *T. R.* 362. *Respublica vs. Orwald,* 1 *Dall. Rep.* 319—also shews it is a criminal proceeding. In *Wallace's Rep.* of cases in the circuit court of the United States for the Pennsylvania district, page 77, it stands *Hollingsworth vs. Duane*—an attachment ordered; and in *page* 134 it is carried on *The United States vs. Duane.* As to the entitling the rule, until the attachment issues, it is to be in the name of the applicant, and on the civil side. But after the attachment issues, it is a criminal case, and in the name of the *United States,* and on the criminal side of the court. All these cases go to show, that where an attachment issues to punish any offence it is considered a criminal proceeding, and on the crown side, and is as much a suit as any other case, and equally conducted by counsel—and the counsel of the state is bound to attend as much to a summary pro-

JUNE 1805

Martin
vs
The State.

ceeding, where the state is concerned, as in any other. When the attorney general came into office, which was in 1778, he was unacquainted with criminal proceedings. The then chief justice, *(Mr. Paca,)* had been an attorney of the provincial court, and was well acquainted with the proceedings of that court. In the dockets of 1779 of the general court, all the attachments are on the same docket with the other criminal business, with the name of the attorney-general as appearing for the state; and there are a number of attachments against jurymen, who were either fined or discharged on paying fees—and in all such cases the fee of the attorney-general is taxed by the clerk with the other costs, and paid to him in the same manner as in other criminal cases. Other dockets before and since 1779, until the present indictment was found, show that such was the practice uniformly during the time *Mr Paca* was the chief justice. When the indictment now before the court was found, and judgment thereon given, the then chief justice, *(Colonel Harrison,)* was presiding. He had never practised in the provincial or general court, and could not be supposed to know the practice of either of those courts previous to his appointment. The attorney-general never received fees in cases of attachments against witnesses for nonattendance. He only received fees on attachments against jurymen; and since the present indictment, he has ceased receiving them on attachments against jurors. An attachment against a witness issues on the application of the party who wishes the attendance of his witness. But if a juror does not attend, a general order of court is given directing attachments against such as do not attend, returnable to the subsequent term. The attachment cannot issue without directions from the attorney-general; and the attorney-general could not direct without the order of the court. *Act* 1715, *c.* 48, *s.* 2, 3. The state is a party on the attachment. The party must conduct his suit by attorney, or in person: But the state being a body corporate cannot appear but by its attorney. The attorney-general

has always been ready to bring this point before the court. He was not much interested in the particular fees, as few cases of the kind occur in the courts. He believes he is not remarked for great anxiety to exact fees. He has never exacted any from his deputies. His object has been to get proper characters to prosecute for him in the county courts. The act of 1715, ch. 48, is not the only act under which attorneys ought to charge fees. It is therefore a question, under what law do attorneys receive fees? The charter of *Maryland* was granted in 1632, and the first book of records is in 1653. The first judiciary proceeding is in 1658, of course attorneys fees must have been regulated previous to that time. There must have been such regulations, for so soon as the courts were established, fees must be allowed. There were laws in existence which cannot now be found. The destruction of a law giving rights does not take away the right, no more than the destruction of a deed conveying an estate destroys the right. The attorney is entitled to a *quantum meruit* for his services. When fees were regulated, the tobacco at one penny half penny per pound was then of more value than a shilling per pound is now. The counsel on the part of the state may say, that by the record it does not appear that the attorney-general appeared to the attachment stated in the indictment on which it is charged he received the illegal fee; that it is not stated in the record that the attorney-general appeared for the state when the party appeared and submitted on the attachment. This is the mode of making up criminal records. The king or the state is considered always in court. *Lill. Ent.* 238. If the record is not legally recited in the indictment, it is not the fault of the attorney-general, and he had no right to say it was not the correct mode. He disclaims all right, if there is any technical error, or other incorrect form in the record before the court, to take any advantage of it. So far as his admission can cure errors, he will admit that the record is regularly before the court, and correct in point of form. He will show that long be-

fore the year 1715 there was a law regulating attor-neys fees; or that there was a regulation by the court amounting to a law, allowing fees to attorneys, and which cannot now be found. The common law by which we are now governed was originally the statute law, which has been long since lost. The first legislature in *Maryland* was in 1637, and among the laws agreed to at the session, held in January of that year, is "*No* 34, *a bill for fees*," which is not to be found, and *Bacon*, in his introduction to his edition of the laws of *Maryland*, has accounted for it. In 1638 sundry bills were read and engrossed, but never read the third time, among which was one—"*For fees*." There is no law to be found on record previous to the year 1699, which regulates attorneys fees. By the act of 1674, *ch.* 31, there was an express regulation of attorneys fees; but this law is not to be found on record, nor is it noted in *Bacon's* edition to be recorded—though there are laws in the same session which are on record. The act in 1638, *ch.* 14, recorded in *Lib. C. and W. H. fol.* 26, is the first law regulating fees which can be found, but this law does not appear to have passed the house—It is however on record. In 1642, *ch.* 5, recorded in *Lib. C. and W. H, fol.* 81, is an act providing for officers. In the *same book, fol.* 103, is a table of fees assessed and published by the Lieut. General and Council, on the 1st of August 1642. There is nothing in this table relative to attorneys fees. 1674, *ch.* 5, "an act for payment of fees due in criminal cases." This act directed that the criminal should pay the fees if they had property, if not, they were to pay by servitude. 1676, *ch.* 11, "an act for limitation of officers fees." There is nothing said in this act respecting attorneys fees; but there is a provision that the governor and council might allow fees where the law had omitted to make provision. 1704, *ch.* 55, "an act for rectifying the ill-practices of attorneys of this province, and ascertaining the attorney-general's, and clerk of the indictment's fees." By a note in *Bacon* it is said "a new law made in

1715, *ch.* 48." By the act of 1704, *ch.* 55, the attorney-general, or his deputy, was to receive, where there was no indictment, a fee of 100lbs. of tobacco. This was a restriction of the previous regulation of fees. It was an exception from the general provision. This law is free from ambiguity. But the act of 1715, *ch.* 48. goes on further, and says, "but if the clerk of indictments draws a bill of indictment upon the said presentment, *and* the party therein presented traverses," &c. instead of *or*, as is in the act of 1704. There are no other regulations in the act of 1704 respecting attorneys fees. The act of 1703, *ch.* 8, "ascertaining fees to the attorneys and practitioners of the law in the courts of this province," &c. seems to give attorneys in the county court a fee of 100lbs. of tobacco in all cases. In 1704 the attorney-general had a fee of 200lbs. of tobacco in certain criminal cases, and if so, why not a fee of 200lbs. of tobacco in civil cases also? The court may judge what are reasonable fees—12 *Mod.* 608, 609. Though it is not conclusive unless the jury concur—and if declared reasonable, it is conclusive in all cases. Where there are no fees limited, the person must have what he reasonably deserves. 2 *Hardress*, 355. Every person rendering services is entitled to be rewarded. 13 *Vin.* tit. *Fees*, *(E.)* pl. 2, 3. The jury may fix the fees, and when fixed they become regular and incontrovertible fees. *Ibid.* pl. 5. On a *quantum meruit*, if allowed by a jury, the fees become established. 1 *Salkeld*, 333. The court are authorised to suppose, that previous to the year 1704 the fee in the county court in all cases was 200lbs. of tobacco. The legislature have never been in the practice of raising fees, and the practice was for the attorney to receive a fee of 200lbs. of tobacco in all cases in the county courts. It is evident there was a previous provision, which law or regulation cannot now be found. It was a bare reasonable fee. And as the legislature have regulated the fees in certain cases, it is to be presumed that the fee in other cases was not less.

*Pinkney*, for the State. He would not long trespass on the patience of the court, which had been already so severely taxed by the long, though learned argument of the attorney-general—whose speech, however, was distinguished by these two qualities, that of being remarkably *redundant*, and remarkably *deficient.* He had resorted to authorities without number to support principally what nobody denied, and abandoned the field of fair argument. The attorney-general has introduced into the discussion three different topics:

1. A feigned issue relative to criminal fees to the deputy attorneys of the state in the county courts.

2. What are the fees of the attorneys in civil cases in the county courts? And

3. What are the fees of the attorney-general, and his right to fees, in cases of attachments against defaulting jurymen?

As to the two first points he has nothing to do with them. He will confine his argument solely to the last point.

The attorney-general is indicted for charging and receiving a fee upon an attachment of contempt issued against a juror for nonattendance; and whether he is authorised to charge a fee in such a case, is the sole question to be discussed. If the attorney-general has a right to charge a fee in that case, the act of 1715, *ch.* 48, must give it to him. It is in vain to talk of usage. The attorney-general must show, that *ita lex scripta est,* and unless he can produce a law justifying the demand, he is guilty of extortion. He does not mean to discuss the question, whether a private attorney, if there existed no regulation with respect to fees, could recover upon a *quantum meruit* for the value of his services. The case of a public officer is very different, and he must show an express law to authorise his demand. If he had a fixed salary allowed him as a recompense for his services, it would be extortion for him to receive more. It is the same thing where there are fees given to him. To vindicate himself he must show a positive law in his justi-

JUNE 1805

Martin
vs
The State

fication, and must not rely upon usage. He acquits the attorney-general of all criminal motives. No man is better acquainted with his generosity and utter negligence in pecuniary concerns. No doubt he received the fee under an entire conviction that he had a right to it. The honour of the attorney-general is not in question. He must stand upon a legal bottom —Upon the last only we are at issue. The sole question before the court, is what is the true construction of the act of 1715 with reference to the fees in the general court? The attorney-general is mistaken when he says that the act of 1715 was made to reduce the fees in the county courts. The act of 1708, *ch.* 8, fixed the fee in *every case* at 100lbs. of tobacco. It had no *casus omissus*. The act of 1715 re-enacts that of 1708, except so far as it is inconsistent with it. It enlarges the fee in some cases; but diminishes it in none. The *7th section* of the act of 1715, *ch.* 48, specifies the cases in which fees in civil suits are to be demanded. The attorney-general contends, that if the act had stopped here, it would have authorised him to demand. It is unnecessary to answer him, because the act has not stopped here. If there had been no special provision, then he might have claimed to be included in the general provision. But such a special provision is expressly made, and excludes the possibility of extending the general provision to the attorney general, so far as respects his fees in the general court. After providing what shall be the fees of the attorneys, it goes on to say, "and to his majesty's attorney-general for any action in the provincial court at the suit of his majesty, indictment, presentment or information, the sum of 400lbs. of tobacco, and no more." This is the special provision made for the fees of the attorney-general, and must reach to every case. If the general assembly had intended to include him in the general provision, then no special provision would have been subsequently made. Where special ees are given we must suppose that no other fees are meant to be allowed but those given—no *casus omissus* to be presumed. The attorney-general seems to

June 1805
Martin
vs.
The State

be aware of the force of this argument, and has therefore contended that attachments come within the words of this provision. It cannot be contended that an attachment is either an indictment, presentment or information. There being only one other expression in the provision on which to rely, the attorney general has contended that an attachment is an action or *quasi* an action. To do this, he has cited a number of cases to prove, what any of them would have established and cannot be controverted, that an attachment is a criminal proceeding. But still it remains to be proved that an attachment is an action. He has always understood that the word "action" was used in this law in contradistinction to criminal suits. The legislature could not have intended to mean by the word "action," criminal proceedings, because they have afterwards used words to embrace almost every criminal proceeding. In the provision regulating the fees of prosecutors in the county courts, the word "action" is not used. Yet attachments against jurors as frequently issue from the county courts as from the general court. It follows therefore, that the word "action" must mean civil suits. The definition of the word "action" in the law books, all prove that it is either the assertion of an individual right, or a criminal proceeding carried on by and for the use of an individual. Actions are said to be either criminal or civil; criminal, as appeals of death, felony or mayhem— civil, either real personal or mixed. 1 *Bac. Ab.* 26. 2 *Wood's Inst.* 561. *Jacob's Law Dictionary*, tit. *Action.* But it is needless to examine the books for a definition of the word action; the sense in which the legislature have used it is obvious. If they had intended it as a *nomen generalissimum*, to comprehend every species of criminal as well as civil proceedings, why add the other words "indictment, presentment or information?" He declined noticing the cases which had been cited by the attorney-general to establish principles totally irrelevant to the question in issue, and which he was not concerned to refute. He had contented himself with making such observations only as he

June 1805

Martin
vs
The State

conceived to be required by his duty. He had no wish to strip the office of any of its emoluments. If the court, consistently with the laws of the land, could reverse the judgment of the general court, he should rejoice  The question, however, is not what fees *ought to be allowed*, but what were by law authorised to be received.  It appeared to him most clearly, that the attorney-general had no claim to fees in this summary mode of proceeding—nor is it proper he should have, for the proceedings, with respect to him, is principally a matter of form.  As he understood the law, a process of attachment can never be resorted to when any other will serve—so that the attorney-general's argument, that had a more circuitous mode of proceeding been adopted there could have been no doubt of his right, has no force.  He submits the case with the few remarks which he has thought proper to make, adding that the crowd of authorities adduced by the attorney-general has nothing to do with the real merits of the question.

THE COURT OF APPEALS *affirmed* the judgments of the General Court in both the cases.